**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

VINO KUMAR SAVAL; GITA KAMALA
NANIKRAM,

*Petitioners,*

v.

ERIC H. HOLDER Jr., Attorney
General,

*Respondent.*

No. 05-75622

Agency Nos.
A071-950-956
A071-950-957

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted March 12, 2010*
San Francisco, California

Filed September 23, 2010

Before: Cynthia Holcomb Hall, John T. Noonan and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Callahan;
Dissent by Judge Noonan

---

*The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

**COUNSEL**

Alison Dixon, San Francisco, California, for the petitioner.

Peter Keisler, Assistant Attorney General, and Michelle Latour, Washington, D.C., and Joan E. Marshall, Dallas, Texas, for the respondent.

**OPINION**

CALLAHAN, Circuit Judge:

Vino Kumar Saval ("Saval") and his wife Gita Kamala Nanikram ("Nanikram") appeal the Board of Immigration Appeals' ("BIA") decision denying asylum, withholding of removal, and relief under Article III of the Convention Against Torture ("CAT"). We have jurisdiction pursuant to 8 U.S.C. § 1252. We dismiss Saval's petition as moot and we deny in part and dismiss in part Nanikram's petition.

I

Saval and Nanikram, citizens and natives of India, entered the United States in July 1991 without inspection. In August 1991, they filed applications for asylum. Saval was the principal applicant and Nanikram filed a derivative application. The Immigration and Naturalization Service[1] charged them with being deportable and they appeared before an Immigration Judge ("IJ") in December 1995.

---

[1] On March 1, 2003, the functions of the Immigration and Naturalization Service transferred from the Department of Justice to three agencies within the newly formed Department of Homeland Security.

At the 1995 hearing, Saval testified that before coming to the United States, he and his wife lived in New Delhi, India. Saval stated that he had been active in a Hindu religious party whose goals were to educate people about Hinduism and to build a temple on a site of a former mosque. Saval alleged that he and his colleagues were beaten and threatened by Muslim extremists. He claimed that he received death threats and that he and his wife fled to the United States after a colleague was murdered.

Saval's asylum application and his written declaration contained inconsistent statements. His application claimed that he feared harm from Muslim fundamentalists, but his declaration indicated that he was Muslim and feared persecution from the Hindus. At his 1995 hearing, Saval testified that he was born a Hindu and was never a Muslim. He admitted that he had read his declaration but did not know why it contained the paragraph stating that he was Muslim. Saval also briefly mentioned that his wife was abducted on one occasion.

The government cross-examined Saval about whether he had told the asylum officer that he and his wife were Muslim. The government proffered the officer's notice of intent to deny Saval's application because of inconsistencies, and Saval's attorney objected, arguing that the notice should not be admitted unless the asylum officer was produced and subject to cross-examination. Saval's attorney also asked for more time to obtain additional documentation.

The IJ denied Saval and Nanikram relief because of inconsistencies in Saval's story. The BIA affirmed on appeal. Saval and Nanikram filed a petition for review with this court and we remanded, holding that due to the IJ's failure to make an explicit credibility determination, we could not assess the merits of Saval's claims. *Saval v. INS*, 142 F.3d 445 (Table) (9th Cir. 1998), 1998 WL 187479. The BIA then remanded to the IJ with instructions to allow each party to present additional evidence.

A further hearing was held before the IJ in 2004. Saval offered several articles discussing the religious tension and violence throughout India between Hindus and Muslims. Neither party made reference to the asylum officer's 1995 report and neither called him as a witness. While Saval's counsel was questioning Saval concerning his inability to procure corroborating documents from the Hindu religious party he had belonged to, Saval stated for the first time that Nanikram was Muslim. Saval asserted that this was the reason why he could not get corroborating documents from the Hindu party and was also the reason why they could not live safely in some other place in India.

The IJ denied Saval and Nanikram relief, finding that Saval was not credible. On appeal, the BIA affirmed. In September 2005, Saval and Nanikram filed the present petition for review with this court.

In February 2010, we ordered the petition submitted on the briefs as of March 12, 2010. On that day, petitioners filed a "motion to stay mandate and place case in mediation," revealing for the first time that Saval had died in February 2007. The government eventually filed opposition to the motion. We hereby deny the motion to stay the mandate and to place this case in mediation.

II

Saval died in February 2007, and accordingly, his petition for review is dismissed as moot. *See Gonzalez v. Holder*, 594 F.3d 1094, 1095 (9th Cir. 2010). However, because there may be collateral consequences from the dismissal of Nanikram's derivative petition for review, we consider her petition on its merits.

[1] In his dissent, Judge Noonan cites 8 U.S.C. § 1158(b)(3) which provides that a spouse "who is granted asylum under this subsection may, if not otherwise eligible for

asylum under this section, be granted the same status as the alien if accompanying, or following to join, such alien." Unfortunately, this provides little guidance for the situation we confront: a claim by a spouse that asylum should have been granted several years before her spouse, the primary applicant, died.[2]

The parties have not asserted that Nanikram's petition is moot. As noted, Saval's death was brought to the court's attention by Nanikram in a motion to stay the mandate and place the case in mediation. The government opposed mediation asserting that if Nanikram sought to pursue a new claim for asylum, she should file a motion to reopen with the BIA. Neither party, however, suggested that the petition for review should be dismissed as moot.

In our opinion in *Gonzalez*, we dismissed a petition for review because the sole petitioner died while the appeal was pending. In doing so we nonetheless commented that we had examined the record and determined that there were no remaining collateral consequences, and that "neither Petitioner's counsel nor the government has asserted any collateral consequences exist." *Id.* at 1095.

**[2]** Our review of the record suggests that there may be collateral consequences if we dismiss Nanikram's derivative petition. We note that 8 C.F.R. § 208.14(f) states:

> The denial of an asylum application filed by a principal applicant for asylum shall also result in the denial of asylum status to any dependents of that principal applicant who are included in that same

---

[2]Judge Noonan's citations to 8 C.F.R. § 1208.21(b) and *Haddad v. Gonzalez*, 437 F.3d 515, 516 (6th Cir. 2006), are also not dispositive. Although they indicated that a person should be a spouse at the time an application is approved, neither addresses the situation where an applicant contends that she was entitled to relief years before the spouse died.

application. Such denial shall not preclude a grant of
asylum for an otherwise eligible dependent who has
filed a separate asylum application, nor shall such
denial result in an otherwise eligible dependent
becoming ineligible to apply for asylum due to the
provisions of section 208(a)(2)(C) of the Act.

Under this regulation, Nanikram may, as noted by our dissent-
ing colleague, file her own independent application for asy-
lum. The regulation, however, indicates that the denial of
asylum to the principal applicant does foreclose a derivative
applicant from asserting that basis for relief. In other words,
in this case, the dismissal of Nanikram's derivative petition as
moot would render the BIA's denial of relief on the grounds
raised in Saval's petition final and binding on Nanikram. This
may seem inconsequential in light of our determination that
the BIA properly denied Nanikram relief. Our jurisdiction,
however, should be considered separately from our evaluation
of the underlying merits of the petition. If we were to hold
that we lack jurisdiction to consider Nanikram's derivative
petition, we would create a precedent precluding us from con-
sidering a derivative petition which presented an overwhelm-
ingly persuasive claim that asylum should have been granted
years before the primary applicant's death. These concerns,
coupled with counsel's failure to assert that there are no col-
lateral consequences, lead us to address Nanikram's petition
for review on its merits.

## III

[3] We determine that petitioner waived her due process
argument based on the IJ's refusal to allow Saval to cross-
examine his asylum officer. Despite the BIA's instruction on
remand, Saval failed to call the asylum officer as a witness or
even raise the due process issue during the 2005 hearing
before the IJ. When a petitioner fails to raise an argument "be-
fore the IJ or the BIA, [he] has waived it and cannot raise it
before this Court." *Rodas-Mendoza v. INS,* 246 F.3d 1237,

1240 (9th Cir. 2001); *see also Farhoud v. INS,* 122 F.3d 794, 797 (9th Cir. 1997).

**[4]** We review adverse credibility findings under a deferential "substantial evidence standard." *Gui v. INS*, 280 F.3d 1217, 1225 (9th Cir. 2002). Adverse credibility determinations are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary. *See INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992); *Don v. Gonzales*, 476 F.3d 738, 741 (9th Cir. 2007).

**[5]** Here, substantial evidence supports the IJ's adverse credibility finding. First, Saval's application and attached declaration for asylum are inconsistent — the former states he is Hindu and the latter states he is Muslim. Moreover, when asked about the discrepancy, Saval failed to give a consistent explanation. He explained that when he signed the declaration, "that paragraph," which stated he was Muslim, was "not there." However, of the six paragraphs in the declaration, three state he is Muslim. Moreover, Saval's explanation that he did not study the declaration "with a microscope" is inconsistent with his first response, which suggests he studied the declaration well enough to know "that paragraph" was not there.

**[6]** Second, Saval's assertion in 2005 that his wife, Nanikram, is Muslim raises questions that go to the heart of the asylum application. *See Alvarez-Santos v. INS*, 332 F.3d 1245, 1254 (9th Cir. 2003) (noting that omitting a pivotal event in his asylum application was a compelling reason to discredit the petitioner's credibility). This claim, which Saval withheld for thirteen years, was advanced to suggest that he fears persecution from Hindus instead of, or in addition to, Muslims. Moreover, this new assertion also raises questions concerning Saval's brief assertion at his 1995 hearing that his wife was abducted on one occasion, and his failure to mention his wife's abduction in his asylum application. Although omissions of detail in asylum applications are insufficient to

uphold an adverse credibility finding, *Lopez-Reyes v. INS,* 79 F.3d 908, 911 (9th Cir. 1996), Saval's claim of abduction and subsequent assertion that Nanikram is Muslim are more than mere omissions of details. The claim of abduction was made to bolster his grounds for fearing persecution by Muslims in a predominately Hindu country. However, the implication was misleading in light of his later claim that Nanikram is Muslim.

**[7]** In sum, Nanikram has not shown that the adverse credibility determination was not supported by substantial evidence.

## IV

Nanikram's claims for the withholding of deportation and for relief under the Convention Against Torture are dismissed as they may not be maintained derivatively. *See Ali v. Ashcroft*, 394 F.3d 780, 782 n.1 (9th Cir. 2005).[3]

## V

**[8]** We dismiss Saval's petition for review because he has died, but decline to dismiss Nanikram's petition in light of the possible collateral consequences of such action. *See Gonzalez*, 594 F.3d at 1095. We deny Nanikram's petition to review the BIA's denial of asylum because she has failed to carry her burden of showing that the adverse credibility determination was not supported by substantial evidence. *See Don*, 476 F.3d at 745. We dismiss Nanikram's claims for withholding of removal and under the CAT because those claims may not be asserted derivatively. *Ali*, 394 F.3d at 782 n.1.

---

[3]In *Ali*, 394 F.3d at 782 n.1, we noted that 8 U.S.C. § 1158(b)(3) allows derivative asylum for spouses and children, but that 8 U.S.C. § 1231(b)(3) does not provide for derivative withholding of removal. Such distinctions tend to support our concern that dismissing a derivative applicant's asylum petition based on the primary applicant's demise may have collateral consequences.

**Dismissed** in part and **denied** in part.

---

NOONAN, Circuit Judge, dissenting:

Vino Kumar Saval died in February 2007, before any petition on his behalf was considered by this court. His case is beyond our jurisdiction. We are not deciding it.

The petition for asylum by Saval's wife, Gita Kamala Nanikram, is what is known as a "derivative claim." Her claim is dependant on her husband's receipt of asylum status from the Attorney General. 8 U.S.C. § 1158(b)(3). Even if the BIA had erred in denying Saval's asylum claim, we could not remand for the Attorney General to grant asylum to someone who is no longer alive. As the BIA's regulations make plain, if the spousal relationship ends before the Attorney General approves an asylum application, a derivative application must be rejected. *See* 8 C.F.R. § 1208.21(b); *see also, e.g.*, *Haddad v. Gonzales*, 437 F.3d 515, 516 (6th Cir. 2006) ("The regulations make a spouse's receipt of this derivative benefit contingent on the spousal relationship being in existence when the principal alien's asylum application is approved."). Because we have no way of granting Nanikram the relief she seeks, her petition is moot. *See, e.g.*, *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) ("[I]f an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed." (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895))).

As night follows day, Nanikram's petition must be dismissed for lack of jurisdiction.[1]

---

[1]Whether Nanikram's derivative claim is denied on the merits or dismissed for lack of jurisdiction, she is not precluded from filing her own independent application for asylum. *See* 8 C.F.R. § 208.14(f).